UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RHONDA A.,

                              Plaintiff,

v.                                                                                1:19-CV-781(TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

OLINSKY LAW GROUP                      MELISSA DelGUERCIO, ESQ.
for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

HON. GRANT JAQUITH                      KEVIN M. PARRINGTON, ESQ.
United States Attorney                          Special Assistant
for Defendant
100 S. Clinton St.
PO Box 7198
Syracuse, NY 13261-7198

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**<u>ORDER</u>**

       Presently before the Court in this action, in which Plaintiff seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on July 24, 2020, during a telephone conference at which a court reporter was

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

present. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found the Commissioner's determination resulted from the application of proper legal principles and was supported by substantial evidence, and I provided further detail regarding my reasoning and addressing the specific issues raised by the Plaintiff in her appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this Order and is incorporated in its entirety by reference herein, it is hereby,

**ORDERED**, as follows:

(1) Defendant's motion for judgment on the pleadings is **GRANTED**;

(2) The Commissioner's determination that Plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is **AFFIRMED**; and

(3) The Clerk is directed to enter judgment, based upon this determination, dismissing Plaintiff's complaint in its entirety.

SO ORDERED.

Dated: July 30, 2020
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------x
RHONDA A.,

                            Plaintiff,

vs.                         1:19-CV-781

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
--------------------------------------x
```

Transcript of a **Decision** held during a Telephone Conference on July 24, 2020, the HONORABLE THÉRÈSE WILEY DANCKS, United States Magistrate Judge, Presiding.

A P P E A R A N C E S

(By Telephone)

```
For Plaintiff:      OLINSKY LAW GROUP
                    Attorneys at Law
                    Suite 210
                    Syracuse, New York  13202
                      BY:  MELISSA DelGUERCIO, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of the General Counsel
                    JFK Federal Building, Room 625
                    15 New Sudbury Street
                    Boston, Massachusetts 02203
                      BY:  KEVIN M. PARRINGTON, ESQ.
```

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1              (The Court and counsel present by telephone.)
2              THE COURT:  I have before me a request for judicial
3    review of an adverse determination by the Acting Commissioner
4    under 42 United States Code Section 405(g).
5              The background is as follows:  Plaintiff was born
6    in February of 1973 and is currently 47 years old.  She was
7    43 years old at the onset of her alleged disability.  She has
8    a high school diploma.  She has not engaged in substantial
9    gainful activity since the alleged onset date.  She
10   previously worked jobs that included a cashier, a bakery
11   clerk, and a baby-sitter.  In her application for benefits,
12   she indicated she suffers from neuropathy of both hands and
13   feet, depression, asthma, and gastrointestinal problems.
14             Procedurally, plaintiff filed for Title II benefits
15   on May 26, 2016, and for Title XVI benefits on June 27, 2016.
16   Both applications alleged disability beginning specifically
17   on May 5th of 2016.  A hearing was conducted by
18   Administrative Law Judge Kieran McCormack on May 23, 2018,
19   wherein plaintiff testified as did a vocational expert.  The
20   plaintiff was represented by an attorney at the hearing who
21   also represented plaintiff through the Appeals Council
22   process.  ALJ McCormack issued a decision on July 5, 2018,
23   finding that plaintiff was not disabled at the relevant
24   times.  The Social Security Administration made that a final
25   determination of the agency by the Appeals Council's May 5,

1  2019 denial of plaintiff's request for review.  This timely
2  District Court action followed.
3           ALJ McCormack applied the five-step sequential test
4  for determining disability.  At step one, he found plaintiff
5  had not engaged in substantial gainful activity since the
6  onset date of disability.  At step two, he concluded
7  plaintiff has the following severe conditions:  Diabetes
8  mellitus, diabetic neuropathy, degenerative disc disease of
9  the cervical and lumbar spine, osteoarthritis of the right
10 knee, bilateral carpal tunnel syndrome, morbid obesity,
11 asthma and chronic rhinitis, and major depressive disorder.
12 At step three, the ALJ concluded that plaintiff's conditions
13 do not meet or medically equal any of the listed
14 presumptively disabling conditions, considering several
15 physical conditions related to spine and joint disorders,
16 asthma, diabetes, peripheral neuropathy, and also the mental
17 health listings.  Then after a review of the record evidence,
18 the ALJ determined plaintiff is capable of performing
19 sedentary work, but with several detailed additional
20 nonexertional limitations considering her physical and mental
21 abilities.  At step four, the ALJ concluded plaintiff could
22 not perform any of her past relevant work.  At step five, the
23 ALJ applied the Medical-Vocational Guidelines as well as
24 obtained testimony from a vocational expert, and concluded
25 that plaintiff was not disabled.

As relevant to the time period in question, plaintiff treated for primary care at Hudson River Healthcare. She saw a nurse practitioner there as well as several physicians, mainly Dr. Welch-Philp, and she also saw a podiatrist there. She was also treated at Westchester Neurology mainly by Dr. Qureshi, and also by sleep specialist Dr. Malkani, and nurse practitioner Doblin. During the relevant time period, she also treated at Gastroenterology of Westchester with Dr. Fallick, and at Spinal Pain and Rehabilitation Medicine with Dr. Shah and a physical therapist. She also received gastroenterology care from Dr. Turchioe, and orthopedic care from Dr. Kalache. She was followed mainly for allergy testing and care by Dr. Nowak of ENT and Allergy Associates, and for mental health care by providers at Mental Health Associates of Westchester. The administrative record also contains treatment notes of two emergency department visits at Saint Joseph's Hospital in Yonkers, New York, and a short admission there for chest pain.

During the relevant time period, diagnostic studies performed include various x-rays of her chest, her lumbar and cervical spine, her hands, and her right hip, knee, and ankle. She had various gastroenterology scopes, an EEG in July 2016, a sleep study in November 2016, and various MRIs of the lumbar spine, brain, and cervical spine. The relevant

1  cervical MRIs were done June 27, 2016 and April 6, 2018.  She
2  also had nerve conduction studies performed in September and
3  November of 2017.
4       Source statements in the record are from
5  Dr. Neghassi of Hudson River Healthcare, and Dr. Elias from
6  Mental Health Associates of Westchester.  Other opinions
7  included in the record are from internal medicine consultant
8  Dr. Wissner, who opined on plaintiff's physical limitations,
9  and consult -- excuse me, and psychologist consultant
10 Dr. Antiaris who conducted a psychological evaluation.
11 Agency reviewer psychologist Dr. Dambrocia also provided an
12 opinion regarding plaintiff's limitations.
13      I've reviewed the record carefully and in light of
14 the arguments of counsel and what counsel have presented in
15 their briefs, I've applied the requisite deferential standard
16 which requires me to determine whether proper legal
17 principles were applied and whether the result is supported
18 by substantial evidence.
19      I'll turn first to the plaintiff's argument that
20 the ALJ erred in evaluating Listing 1.04 regarding
21 plaintiff's cervical spine impairments.  A claimant is
22 automatically entitled to benefits if his or her impairment
23 meets criteria set forth in "the Listings" found in 20 C.F.R.
24 Part 404, subpart P, appendix 1.  The burden is on the
25 plaintiff to present medical findings that show her

1   impairments match a listing or are equal in severity to a
2   listed impairment.  In order to show that an impairment
3   matches a listing, the claimant must show her impairment
4   meets all of the specified medical criteria.  If a claimant's
5   impairment manifests only some of those criteria, no matter
6   how severely, the impairment does not qualify.  The ALJ
7   should set forth a sufficient rationale in support of his
8   decision to find or not to find a listed impairment.  Where
9   it is unclear what evidence the ALJ relied on in making the
10  step three determination, the court may recommend remand.
11  However, a court may also look to other portions of the ALJ's
12  decision as credible evidence in finding that the ALJ's
13  determination was supported by substantial evidence.  In
14  other words, if an ALJ's decision lacks an express rationale
15  for finding that a claimant does not meet a Listing, a court
16  may still uphold the ALJ's determination if it is supported
17  by substantial evidence.
18           Plaintiff argues that her cervical impairments
19  satisfy the criteria for spinal disorders in Listing 1.04,
20  subsection A, which requires evidence of a nerve root
21  compression, characterized by "neuro-anatomic distribution of
22  pain; limitation of motion of the spine; and motor loss
23  (atrophy with associated muscle weakness or muscle weakness)
24  accompanied by sensory or reflex loss."  I find the record is
25  clear that the plaintiff has not exhibited each of the

1  necessary neurological deficits found in the listing and that
2  the ALJ explained it in his decision.
3              The ALJ cited several MRIs to support this
4  determination.  The cervical spine MRI in June of 2016 showed
5  no foraminal impingement and no abnormal spinal cord
6  intensity.  The lumbar MRI in 2016 showed no spinal stenosis,
7  and no compromise of the spinal cord canal or foramina.  The
8  April 2018 MRI of the cervical spine, which plaintiff argues
9  shows definitive nerve root compression, is unclear and
10 ambiguous as it indicates a mild disc bulge at C6-C7 is
11 "possibly slightly impinging the right C7 nerve root."  Even
12 if the MRI had shown clear nerve root compression, other
13 substantial evidence in the record shows that plaintiff did
14 not meet the neurological deficits required by the subject
15 listing since the impairment must also involve motor loss,
16 which is atrophy associated with muscle weakness, or muscle
17 weakness.  For example, rehabilitation and pain specialist
18 Dr. Shah repeatedly charted from June of 2017 through
19 February of 2018 that plaintiff's neurologic exams showed
20 intact motor and sensory findings, and symmetrical deep
21 tendon reflexes, although plaintiff did exhibit muscle spasms
22 and tenderness in the cervical area.  The Westchester
23 neurologists Dr. Qureshi and Dr. Malkani also repeatedly
24 noted that plaintiff's motor strength was intact to
25 confrontation in upper and lower extremities.  Although she

1  had tenderness in her cervical paraspinal area bilaterally,
2  her muscle tone was normal.  She had normal strength and
3  normal deep tendon reflexes in both upper extremities.
4  Dr. Wissner's consultative exam performed during the relevant
5  time period showed full range of motion in plaintiff's
6  cervical spine.  On exam, plaintiff had no muscle atrophy in
7  her extremities, and her strength and deep tendon reflexes
8  were equal at 5 out of 5 in the upper and lower extremities.
9  Plaintiff's grip strength was 5 out of 5 bilaterally.  Thus,
10 I find that substantial evidence supports the ALJ's
11 determination that plaintiff's cervical impairment does not
12 meet the relevant listing requirement.  I also find that,
13 although the ALJ did not outline plaintiff's medical records
14 concerning her cervical impairments when determining whether
15 they met the listing criteria, he specifically referenced
16 that he discussed the medical evidence in another section of
17 the decision.  Indeed, the ALJ later detailed all of
18 plaintiff's medical records including her cervical condition
19 when determining her RFC.  It's entirely proper to read the
20 ALJ's decision in whole to determine whether substantial
21 evidence supports the conclusions.
22         Next, I turn to plaintiff's arguments that the ALJ
23 erred in determination of plaintiff's residual functional
24 capacity, or RFC, and specifically that the ALJ did not give
25 proper weight to the opinion evidence.  I have done a

1   thorough and searching review of the record and find that the
2   ALJ properly assessed the medical and nonmedical evidence of
3   record and the RFC is supported by substantial evidence.  The
4   ALJ thoroughly discussed the medical evidence and the other
5   evidence of record, formulated the RFC based upon an
6   assessment of all medical and nonmedical evidence as a whole
7   for the relevant time period, and thoroughly explained his
8   analysis in arriving at the RFC.
9           The ALJ's decision shows he considered plaintiff's
10  testimony, her adult function report, her activities of daily
11  living as reported to treatment providers and consultants,
12  and all treatment records for the relevant period.  He gave
13  significant weight to the opinion of consulting internal
14  medicine physician Dr. Wissner.  He credited the examining
15  consulting psychologist Dr. Antiaris' opinion with
16  significant weight to the extent it reflected her clinical
17  observation, but gave it little weight regarding the
18  conclusion that plaintiff's psychiatric problems would not
19  interfere with her ability to function on a daily basis
20  because the record showed otherwise.  The ALJ also gave
21  significant weight to nonexamining agency psychologist
22  Dr. Dambrocia.  He gave little or no more than some weight to
23  the opinion of Dr. Neghassi who provided a diabetes source
24  statement, and gave little weight to treating psychiatrist
25  Dr. Elias.  Of note, I reviewed the records thoroughly and

1  could find not one treatment note authored by Dr. Neghassi.
2  Plaintiff argues the assessment of the opinions of
3  Dr. Neghassi and Dr. Elias were improper because the ALJ
4  mischaracterized the medical evidence regarding the objective
5  findings about plaintiff's diabetes, asthma and hypertension,
6  as well as her mental symptoms and findings and her treatment
7  relationships with these physicians.  For the following
8  reasons, I find these arguments unpersuasive.
9          Initially, I note that an ALJ is not required to
10 accept every limitation assessed by an examining consultant.
11 There is no requirement that the ALJ accept every limitation
12 in the opinion of a medical source or consultative examiner.
13 Nor must the RFC identically track any one of those opinions.
14 The ALJ has the responsibility of reviewing all of the
15 evidence before him, resolving inconsistencies, and making a
16 determination consistent with the evidence as a whole.  In
17 other words, it is the ALJ's responsibility to weigh the
18 various opinions along with other evidence and determine
19 which limitations were supported by the overall evidence of
20 record.  The court cannot re-weigh the evidence under the
21 substantial evidence review standard.  Here, I find the ALJ
22 clearly considered all of the opinions and other evidence of
23 record when determining plaintiff's overall RFC including the
24 mental limitations.  I have done a thorough and searching
25 review of the record and find the ALJ properly assessed the

1  opinions and gave good reasons for the weight given to the
2  opinions.
3       Regarding the opinion of Dr. Neghassi from Hudson
4  River Healthcare, the ALJ acknowledged the treatment
5  relationship with plaintiff, but noted that the record showed
6  plaintiff's diabetes, hypertension, and asthma were mostly
7  well controlled and stable, and not associated with any
8  complications, although plaintiff had exhibited a mild tremor
9  on one encounter in April of 2017.  Progress notes, for
10 example, by Dr. Philp at Hudson River Healthcare repeatedly
11 noted that plaintiff's type 2 diabetes was without
12 complications, although she had some elevated fingersticks at
13 times.  Her diabetes was noted as stable with medications,
14 and she was noted to be doing well with her diabetes.  Her
15 asthma was found to be mild and intermittent.  Her blood
16 pressure was noted to be "at goal."  The podiatrist at Hudson
17 River Healthcare noted plaintiff's neurologic exams were
18 normal including coordination, and her joint position sense
19 and vibratory sense were intact.
20      Noted observations by the physicians at Westchester
21 Neurology also do not support Dr. Neghassi's opinion that
22 plaintiff could stand or walk for only 10 minutes at a time
23 and lift only 10 pounds occasionally.  Dr. Qureshi and
24 Dr. Malkani repeatedly observed plaintiff to have an
25 unremarkable gait with no ataxia, and with adequate range of

|    |                                                                          |
|----|--------------------------------------------------------------------------|
| 1  | motion in her musculoskeletal system.  She had some decreased            |
| 2  | sensation mainly on her right, but she had normal reflexes               |
| 3  | and normal strength in both upper extremities.  Likewise,                |
| 4  | Dr. Shah consistently noted no ataxia in her gait, and                   |
| 5  | normal, intact motor and sensory exams.  Orthopedist                     |
| 6  | Dr. Kalache found plaintiff to have arthritis in the right               |
| 7  | knee and hip, but she had full extension and flexion of the              |
| 8  | knee.  Dr. Fallick noted plaintiff's overall musculoskeletal             |
| 9  | system was normal, and she had normal balance, gait, and                 |
| 10 | stance.  Consultant Dr. Wissner noted plaintiff had a normal             |
| 11 | gait, could walk on heels and toes without difficulty, and               |
| 12 | she had a normal stance.  Dr. Wissner also charted that no               |
| 13 | muscle atrophy was present in plaintiff's extremities and she            |
| 14 | had full and equal strength in her upper and lower                       |
| 15 | extremities.  Thus these medical findings support the ALJ's              |
| 16 | determination that plaintiff could do sedentary work with                |
| 17 | some limitations.  Additionally, I find that while                       |
| 18 | Dr. Wissner's findings were from an exam in 2016, her                    |
| 19 | findings were consistent with the later observations by Drs.             |
| 20 | Shah, Qureshi, and Malkani, such that Dr. Wissner's opinions             |
| 21 | were not "stale" as plaintiff argues.  I also find that while            |
| 22 | diagnostic studies showed diabetic neuropathy, the ALJ noted             |
| 23 | that to be a severe condition and the decision shows he                  |
| 24 | clearly considered it in limiting plaintiff to sedentary work            |
| 25 | with additional limitations.  As such, I find no error with              |

1    the ALJ's consideration of Dr. Neghassi's opinion.
2             Turning now to the opinion of Dr. Elias of Mental
3    Health Associates of Westchester regarding plaintiff's mental
4    capacity, I find the ALJ properly considered it and the
5    little weight attributed to it was also supported by
6    substantial evidence.  The ALJ noted the treatment
7    relationship Dr. Elias had with plaintiff, and his findings
8    on exam of the plaintiff, and the findings of other health
9    professionals regarding plaintiff's mental status.  The
10   mental status evaluations of plaintiff done at Mental Health
11   Associates between April of 2016 and January of 2018
12   repeatedly show plaintiff to be appropriately groomed, with
13   no abnormal psychomotor behavior exhibited.  Her speech
14   always had a normal rate and rhythm.  Her affect was
15   consistently euthymic, meaning it was normal.  Her mood was
16   good and her thought process was logical.  Her attention and
17   concentration were good and she had fair judgment and
18   insight.  She denied hallucinations, delusions, and suicidal
19   ideation, although she was noted to have attempted suicide in
20   2015 before the relevant date of disability.  She was always
21   noted to be oriented in all spheres also, and with average
22   intellectual functioning.  Her attitude was good and she was
23   engaged in her treatment.  In short, these findings were
24   consistently normal and consistent with other evidence in the
25   record and inconsistent with Dr. Elias' expressed opinion.

1          For example, Dr. Qureshi and Dr. Malkani noted that
2    she was alert and responded to questions appropriately.
3    Dr. Fallick found her to have anxiety, but no sleep
4    disturbances and no depression.  Dr. Shah repeatedly found
5    her affect and behavior normal and appropriate.  Dr. Nowak
6    charted that she was oriented in all spheres, and had normal
7    level of consciousness, and normal memory.  The providers at
8    Hudson River Healthcare consistently found plaintiff to be
9    fully alert and oriented with a pleasant mood and normal eye
10   contact.  Consultant Dr. Antiaris also found plaintiff to
11   have appropriate eye contact, with normal posture and motor
12   behavior.  Her speech was fluent and clear.  Her thought
13   processes were coherent and goal oriented.  Her mood was
14   normal, and she had a full range and appropriate affect.  Her
15   sensorium was clear and she was oriented in all spheres.  Her
16   attention and concentration were mildly impaired due to her
17   limited intellectual functioning, and her cognitive
18   functioning was below average, but her remote and recent
19   memory were intact and she had fair judgment and good
20   insight.
21         In short, I find that the ALJ considered the
22   relevant factors when weighing Dr. Elias' opinion by noting
23   the opinion was inconsistent with examinations and treatment
24   notes from his own practice, as well as other treating
25   providers as I've outlined.  Plaintiff's daily activities of

1  living as she reported and as reported to her providers are
2  also inconsistent with the limitations opined by Dr. Elias.
3  Plaintiff cooked two to three times a week and prepared meals
4  daily.  She did laundry and dusting and washed dishes and she
5  shopped.  She was able to take care of her personal hygiene
6  and she had children that she took care of.  She was able to
7  use a smartphone, she used public transportation and could
8  handle money and pay her bills.
9        Plaintiff also takes issue with the ALJ giving
10 significant weight to the opinion of nonexamining agency
11 consultant Dr. Dambrocia.  However, this opinion is
12 consistent with other findings in the record as I've already
13 detailed.  Although Dr. Dambrocia did not personally examine
14 the plaintiff, it is well settled that the opinions of state
15 agency consultants can be given weight if supported by
16 medical evidence and other evidence of record.  The ALJ
17 clearly stated, and the record supports, that he gave
18 significant weight to Dr. Dambrocia's opinion because it was
19 supported by the record evidence as I've outlined.
20       I also find all of the treatment briefly outlined
21 above was thoroughly reviewed by the ALJ, as I've indicated
22 earlier, and the records provide clear and substantial
23 evidence to support the RFC determination such that
24 meaningful judicial review is possible.  In *Cichocki v.*
25 *Astrue*, 729 F.3d 172, the Second Circuit stated that only

1   where the reviewing court is unable to fathom the ALJ's
2   rationale in relation to the evidence in the record would
3   remand be appropriate for further findings or clearer
4   explanations of the decision.  Here, I find the ALJ's
5   analysis regarding plaintiff's functional limitations and
6   restrictions affords an adequate basis for meaningful
7   judicial review, applies the proper standards, and is
8   supported by substantial evidence such that additional
9   analysis would be unnecessary or superfluous.  Hang on for
10  one second, please.  Okay, off the record.
11              (A discussion was held off the record.)
12              THE COURT:  All in all, I find the ALJ properly
13  weighed the opinions of record for the relevant period, gave
14  good reasons for the weight given to the opinions, and the
15  ALJ considered all of the medical evidence showing mostly
16  limited findings on the mental exams.  The ALJ also properly
17  considered plaintiff's own reported activities per her
18  testimony, her function report, and as she reported to
19  providers and consultants.  All of this supports the ALJ's
20  determination of plaintiff's RFC.  In short, I find the ALJ
21  properly explained the reasons for the RFC.  In light of the
22  foregoing and considering the entire record and the ALJ's
23  determination, I find the ALJ applied the appropriate legal
24  standards of review in considering the opinion evidence in
25  determining plaintiff's RFC and the RFC is supported by

1   substantial evidence.
2          So I grant defendant's motion for judgment on the
3   pleadings and I will enter a judgment dismissing plaintiff's
4   complaint in this action.  A copy of the transcript of my
5   decision will be attached to the order should any appeal be
6   taken from my determination.
7                 (Whereupon the proceedings continued.)

```
 1              CERTIFICATE OF OFFICIAL REPORTER
 2
 3
 4       I, JODI L. HIBBARD, RPR, CRR, CSR, Federal
 5  Official Realtime Court Reporter, in and for the
 6  United States District Court for the Northern
 7  District of New York, DO HEREBY CERTIFY that
 8  pursuant to Section 753, Title 28, United States
 9  Code, that the foregoing is a true and correct
10  transcript of the stenographically reported
11  proceedings held in the above-entitled matter and
12  that the transcript page format is in conformance
13  with the regulations of the Judicial Conference of
14  the United States.
15
16              Dated this 28th day of July, 2020.
17
18
19                          /S/ JODI L. HIBBARD
20                          JODI L. HIBBARD, RPR, CRR, CSR
                            Official U.S. Court Reporter
21
22
23
24
25
```